IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Colin D. Whitehouse, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10cv1175 (CMH/JFA) |
| | ) | |
| Gene M. Johnson et al., | ) | |
|    Defendants. | ) | |

## MEMORANDUM OPINION

Colin D. Whitehouse, a Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his rights under the First, Fourth, Ninth, and Fourteenth Amendments were violated when the defendants interfered with his ability to complete his course work for the Whitefield College and Theological Seminary ("WCTS"). Plaintiff also alleges the defendants' actions violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000 et seq. On April 1, 2011, defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K), and has filed a Reply and an Answer along with a Memorandum of Points and Authorities and four affidavits.[1] For the reasons that follow, defendants' Motion to Dismiss will be granted, and final judgment will be entered in their favor.

---

[1] Because defendants filed a Motion to Dismiss and not a Motion for Summary Judgment the Court will consider the statements in plaintiff's affidavits as additional allegations amending plaintiff's initial complaint. "A defendant is not required to file a new motion to dismiss simply because an amended pleading was introduced while his motion was pending. Instead the court may consider the motion as being addressed to the amended pleading." United States v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (internal citations omitted).

1

## I. Background

Plaintiff alleges he has a sincerely held religious belief in the "Protestant Christian faith of the Reformed Calvinist Theology," and as a result he has been "called according to this Christian faith to be involved in the ministry." Compl. at 2. Plaintiff was allegedly enrolled in Whitefield College and Theological Seminary, a registered post-secondary education institution in the state of Florida, while incarcerated at Brunswick Correctional Center and Buckingham Correctional Center. See Talbot Aff. ¶ 7, ECF No. 28. The cost of enrollment including the application cost, tuition, and supplies allegedly totaled $10,000. See Compl. at 4. On September 22, 2009, plaintiff was transferred to Haynesville Correctional Center. See Nancy Whitehouse Aff. at ¶ 5, ECF No. 27. Plaintiff alleges that Haynesville Correctional Center approved his enrollment in WCTS, allowing plaintiff to "pay for, receive, commence, complete, and return" course work from WCTS. Compl. at 4. However, plaintiff contends that defendants eventually began to interfere with his access to materials from WCTS and impeded his ability to complete his course work. Specifically, plaintiff alleges the defendants took the following actions:

> (1) "setting, mandating, and upholding unconstitutional policies, rules, and regulations that prohibit [p]laintiff's purchase of non-music religious CDs, except from one vender [sic] . . . establishing one commercial retailer to monopolize and to establish what religious indoctrination is acceptable. . . therefore, rendering [p]laintiff's preference and approved religious education training . . . inhibited, impeded, and lost through incapability to meet WT[C]S's requirement for completing courses."

Compl. at 4.

> (2) "setting, mandating, and upholding unconstitutional policies, rules, and regulations that prohibit [p]laitniff's religious educational training

2

> through WTS, substantially burdening [p]laintiff's free exercise of religious without a compelling state interest."
>
> Id.
>
> (3) The [d]efendant(s), employees, or agents for them stripped and removed from Plaintiff the paid for documents, materials, and educational property to which [p]laintiff had received prior written approval to receive and financially procured to wit: 1 box of 25 comb-binders, 1 packet of 500 pages of pre-punched paper for comb-binders; 1 packet of 100 clear cover, pre-punched for comb-binders; approximately 12 previously bound courseworks at the Plaintiff's expense; several books
>
> Id. at 5.
>
> (4) Prohibiting [p]laintiff['s] access to Department of Correctional Education ["DCE"] computers without prior complaints upon or provocation of [p]laintiff's violation of policies, rules, and regulations or served charges, even though the proper DCE authorities approved plaintiff to continue prior approved courses from WTS . . . ."
>
> Id. at 7.

Plaintiff alleges that these actions violated the First, Fourth, Ninth, and Fourteenth Amendments as well as RLUIPA. As relief, plaintiff requests monetary damages in the amount of three-million dollars and injunctive relief.

## II. Standard of Review

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III. Analysis

A. Religious Land Use and Institutionalized Persons Act

Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the government is prohibited from taking action that imposes a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). The plaintiff bears the initial burden of showing that he seeks to engage in an exercise of religion and that the challenged practice substantially burdens that exercise. Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009). To determine whether the plaintiff satisfies this initial burden the court must answer two questions:

(1) is the burdened activity a "religious exercise," and if so (2) is the burden "substantial?" Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004).

The RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Furthermore, RLUIPA is to be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." Id. at § 2000cc-3(g). The Supreme Court has stated that the "'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts such as assembling with others for worship service or participating in the sacramental use of bread and wine." Cutter v. Wilkinson, 544 U.S. 709, 720 (2005) (internal citations, alterations omitted). Under this broad definition of religious exercise circuit courts have determined that attending Sabbath and holy day gatherings, Adkins, 393 F.3d at 559, participating in Ramadan, the Islamic holy month of fasting and prayer, Lovelace v. Lee, 472 F.3d 174, 186-187 (4th Cir. 2006) and keeping specific religious diets, qualify as the exercise of religion, Koger v. Bryan, 523 F.3d 787, 797 (7th Cir. 2008) (holding that request for vegetarian diet qualified as religious exercise because it stemmed from plaintiff's practice of Ordo Templi Orientis and not secular concerns); Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007) (stating that there is "no question" that keeping kosher is a religious exercise for purposes of RULIPA).

RLUIPA does not define the term "substantial burden." However, the United States Court of Appeals for the Fourth Circuit has held that, under the RLUIPA, a "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace,

472 F.3d at 187 (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (2005)). Although RLUIPA forbids court from inquiring whether a particular belief or practice is "central" to a prisoner's religion, 42 U.S.C. § 2000cc-5(7)(A), only beliefs or practices that are both sincerely held and rooted in religious belief fall under the protection of the RLUIPA. See Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) (noting that under the RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a request for accommodation, is authentic" and whether his "professed religiosity" is "sincere").

In their Motion to Dismiss, defendants argue that plaintiff has failed to establish that his enrollment in WCTS is a "religious activity" within the meaning of RLUIPA. There is no case law directly on point to determine whether plaintiff's quest for a degree in the ministry is encompassed by RLUIPA's broad definition of "religious activity." However, several circuits have held that prisoners have no constitutional right to a secondary education, be it secular or religious. Canterino v. Wilson, 869 F.2d 948 (6th Cir. 1989); Risso v. Dawson, 778 F.2d 527 (9th Cir. 1985); Garza v. Miller, 688 F.2d 480 (7th Cir. 1982); see also Shaw v. Parker, No. 08-421-GMS, 2009 WL 393951, at *2 (D. Del. Feb. 18, 2009) (no constitutional violation for denying prisoner ability to attend bible college because prisoners have no constitutional right to an education). Nevertheless, in light of RLUIPA's clear demand for broad construction, the Court will assume that plaintiff's enrollment in WCTS is a religious exercise covered by RLUIPA.

However, plaintiff still fails to meet his initial burden because he has not demonstrated that his religious exercise has been substantially burdened. Plaintiff has not explained how any of the defendants' actions have put "substantial pressure" on him to "modify his behavior" or to

"violate his beliefs." Lovelace, 472 F.3d 174, 187 (4th Cir. 2006). Plaintiff can still order the CDs required by WCTS, although not through his preferred vendor. Plaintiff can still submit his course work to WCTS in handwritten form even though he cannot type it, and plaintiff can still organize and submit his work without using the comb-binders and pre-punched covers from WCTS. Cf. Van Wyhe v. Reisch, 581 F.3d 639, 657 (8th Cir. 2009) ("The prison must permit a reasonable opportunity for an inmate to engage in religious activities but need not provide unlimited opportunities."). Plaintiff states that the defendants' actions "extremely set the [p]laintiff on a different schedule and has invariably bothered his conscious with grief and the feelings of pressure." However, the mere usage of the term "pressure" in plaintiff's pleading is not sufficient to establish a substantial burden on plaintiff's religious exercise under Lovelace. Defendants' have not pressured plaintiff to abandon the fundamentals of his religion or violate his beliefs in order to submit his work under defendants' policy. See, e.g., Lovelace, 472 F.3d at 187-88 (finding exclusion from Ramadan meals was a substantial burden because prisoner could not fast during daylight hours and therefore could not fulfill one of the "five pillars or obligations" of Islam); see also, Heleva v. Kramer, 330 Fed. App'x 406, 409 (3d Cir. 2009) (depriving prisoner of literature "designed to uphold and strengthen [prisoner's] faith in God" for a period of eight months was not a substantial burden because prisoner did not have to abandon the precepts of his religion and was not pressured to substantially modify his behavior).

B. First Amendment Claim:

Inmates retain protections under the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S.Const. amend I.; see Cruz v. Beto, 405 U.S. 319, 322 (1977). To state a free exercise

claim under the First Amendment, plaintiff must allege facts sufficient to show (1) that he holds a sincere belief that is religious in nature and (2) that prison regulations impose a substantial burden on his right to free exercise of religion. Hernandez v. Comm'r., 490 U.S. 680, 699 (1989). The Supreme Court has defined "substantial burden" in a variety of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion ... on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963). However, inmates' constitutional rights must be evaluated within the context of their incarceration, and the Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier v. Martinez, 416 U.S. 396, 405 (1974). Accordingly, courts must afford deference to prison officials in their oversight and coordination of the prison and its many aspects, and this deference is achieved in part through the application of a reasonableness test that is less restrictive than the test ordinarily used to evaluate alleged infringements of fundamental constitutional rights. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 84 (1987). A prison regulation that abridges an inmate's constitutional rights is "valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

Similar to RLUIPA, for a claim to prevail under the First Amendment, courts must first determine that the plaintiff engaged in a religious exercise and that the exercise has been substantially burdened. RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States. Lovelace v.

Lee, 472 F.3d 174, 186 (4th Cir. 2006). Thus, because plaintiff failed to allege facts sufficient to establish a substantial burden under the more protective standard or RLUIPA, his claim must fail under the more stringent standard of the Free Exercise Clause.

C. Remaining Claims

Plaintiff's complaint also alleges that the defendants violated the Fourth, Ninth, and Fourteenth Amendments. Plaintiff provides no facts whatsoever supporting his Fourth and Ninth Amendment claims. Therefore, those claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[2]

In regards to plaintiff's Fourteenth Amendment claim, plaintiff states defendants denied "equal protection of religious freedom . . . through equal access to the privilege of utilizing computers for his religious education training in DCE as other students for their secular educational training." Compl. at 7. To succeed on an Equal Protection claim, plaintiffs must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated. But, "discriminatory purpose . . . implies more than intent as volition or intent as

---

[2] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

9

awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of and not merely in spite of its adverse effects upon an identifiable group." McCleskey v. Kemp, 481 U.S. 279, 298 (1987) (internal quotations omitted). As presented, plaintiff has failed to allege anything more than bald, unsupported, conclusory allegations that defendants discriminated against him. Therefore, this claim must also be dismissed pursuant to § 1915A(b)(1).

### IV. Pending Motions

Also pending before the Court are seven different motions by the plaintiff requesting discovery and one motion by the defendants objecting to plaintiff's first motion for discovery. Because the Court will grant defendants' Motion to Dismiss, the pending motions will be denied as moot.

### V. Conclusion

For the foregoing reasons, defendants' Motion to Dismiss will be granted, and this complaint will be dismissed. In addition, plaintiff's seven motions requesting discovery and defendants' motion objecting to discovery will be dismissed as moot. An appropriate Order shall issue.

Entered this __18th__ day of __November__ 2011.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia